*781 HUMPHREYS, J., concurring, in part, and dissenting, in part.
I concur with the analysis and holding with respect to subsections A, B, D and F(2) of section III of the majority opinion that Latour acted in bad faith and discriminated against Vintner under the terms of their existing oral agreement. However, for the reasons that follow, I respectfully dissent from the analysis and holding of subsection C with regard to whether Latour attempted a unilateral amendment to the franchise agreement without good cause, in violation of Code § 4.1-404. Furthermore, because I would reverse the circuit court and the Board on that issue, I also partially dissent from the analysis and holding in subsection F(l) of section III of the majority opinion, and would remand to the circuit court with direction to remand to the Board to reconsider the issue of the appropriate sanction limited to the remaining issues.
I. Unilateral Amendment
The primary point of my disagreement with the majority is with respect to the issue of whether Latour violated Code § 4.1-406 by attempting to amend its agreement with Vintner through the Requirements Announcement without good cause. The hearing panel found that,
Latour’s primary objective, in attempting to force [Vintner’s] signing of the Distribution Agreement and complying with the Requirements Announcement, was to limit [Vintner] from selling Latour wines outside of what Louis Latour considered [Vintner’s] primary area of responsibility. This is in direct contravention of Section 404 of the Act----The plan or scheme conceived by Louis Latour was to enable other distributors to distribute Latour wines in areas of Virginia formerly serviced by [Vintner] pursuant to a longstanding agreement and to limit [Vintner’s] distribution to Surry and Gloucester Counties. This in the Hearing Panel’s view, constitutes a unilateral change or modification of an agreement without good cause. Good cause cannot exist *782 when the unilateral change or modification is in direct contravention of the Act.
The majority affirms this decision holding that because Latour implemented as much of the requirements announcement that it could on its own—for example, refusing to follow “previous shipping arrangements”—Latour unilaterally amended the parties’ agreement for which Latour must demonstrate good cause. And because Latour’s professed intention behind the requirements announcement was to limit Vintner to its primary area of responsibility, the attempted unilateral amendment to the agreement was done without good cause. I disagree with the majority and would reverse the Board on this issue.
Initially, I note that the majority has conflated the issue of Latour acting in bad faith with respect to its obligations under the existing agreement with the issue at hand. While acknowledging the Board’s factual finding that “Latour did not implement the proposal ‘as to’ Vintner,” the majority then promptly ignores that explicit finding, and holds that “It is Latour’s unilateral implementation of the proposed change to the existing franchise agreement with Vintner that violates the statute.” See Footnote 9. Moreover, contrary to the apparent view of the majority, the question before us is not whether the Board erred in holding that Latour’s actions subsequent to Vintner’s refusal to accept the requirements announcement constituted a unilateral amendment to the existing agreement without good cause. Instead, the question presented is whether the Board erred in holding that the proposed requirements announcement constituted a unilateral amendment to the existing agreement without good cause.[16] In my view, it did not.
*783 Latour’s announcement stated that, (1) “[rjetail licensees located in such Primary Area of responsibility shall be considered by Supplier and Distributor as the target market to which Distributor’s obligation under this contract shall be focused;” (2) “Supplier shall have no obligation to facilitate or support in any way ... any activities in which Distributor chooses to engage relating to retail licensees located outside the Territory”; and (3) “Distributor shall furnish monthly depletion and inventory reports for the Latour Wines to Supplier.” The requirements announcement also contained a provision stating, “Supplier shall supply the Latour Wines to Distributor in sufficient quantities to meet the demand for Latour Wines in the Territory. If however, supply of any Latour Wines in [sic] limited, Supplier may, in its sole discretion, allocate the Latour Wines ... in any manner that it determines to be in the best interest of Latour Wines.”
Vintner argues, and the Board found, that these terms, when considered in light of the course of dealings between Vintner and Latour, amount to restricting Vintner to selling solely to retailers within the primary area of responsibility, in *784 violation of Code § 4.1-404. And because in the Board’s view, the requirements announcement illegally restricted Vintner to its primary area of responsibility, the Board held that, “Good cause cannot exist when the unilateral change or modification is in direct contravention of the Act.”
However, in affirming the circuit court and the Board on this point, the majority reaches a different issue from the one presented to us. As the majority acknowledges, the Virginia Wine Franchise Act (‘VWFA”) clearly does not forbid a winery from merely proposing changes to the contractual relationship with its distributors, as long as such changes are not unilaterally implemented except in compliance with the VWFA. Indeed, the VWFA specifically provides for such amendments, and the Board found—as a fact binding on this Court—that no unilateral implementation of the proposed amendments had occurred. See Code §§ 4.1-406 and 4.1-407.
In any event, Latour’s announcement to Vintner proposing amendments to the existing agreement does not forbid Vintner from selling Latour products outside of Surry and Gloucester Counties, and in fact, would have been void had it done so. Rather, it simply relieves Latour from any responsibility to actively participate in or promote Vintner’s efforts to sell outside of Vintner’s primary area of responsibility. Moreover, it allows the winery to allocate its resources among distributors when quantities of a particular product may be low. Thus, in answer to the issue actually presented to us, I would hold that the proposed announcement, standing alone, did not violate Code § 4.1-404.
It seems to me that the chilling effect of the majority’s approval of the Board’s imposition of sanctions for merely proposing changes in a contractual relationship between a winery and its distributors, as distinguished from the sanctions that were appropriately imposed for the actions of Latour with respect to its existing agreement, frustrates rather than furthers the legislative intent of the statute. Specifically, Code § 4.1-400 clearly indicates that the legislative intent behind the VWFA was, in part, “To provide for a *785 system of designation and registration of franchise agreements between wineries and wholesalers with the Board as an aid to Board regulation of the distribution of wine by wholesalers.” By requiring a winery to facilitate a wholesaler outside of its designated primary area of responsibility, even pursuant to an existing franchise agreement, the majority runs afoul of the clear legislative intent to create a territorial system through which the Board can more easily regulate the distribution of wine throughout the Commonwealth. Moreover, by doing so, the majority has in effect encouraged the de facto creation of a dual distributorship, in direct contravention of the VWFA. See Code § 4.1—104 (“No winery shall enter into any agreement with more than one wholesaler for the purpose of establishing more than one agreement for its brands of wine in any territory.”).
II. Good Cause
In light of the fact that I believe that the announcement did not violate Code § 4.1-404, I now turn to whether the remaining facts support the conclusion that Latour’s attempted unilateral amendment to the agreement was without good cause, in violation of Code § 4.1—406.[17]
*786 Under the VWFA, a winery is permitted to impose requirements on a wholesaler by unilateral amendment, so long as it complies with the procedural requirements set forth in the VWFA. Code § 4.1-406; see Code § 4.1-407.[18] Specifically, Code § 4.1-406 requires that in order to impose a unilateral amendment upon the wholesaler, “the winery [must] first compl[y] with § 4.1-407 and good cause [must] exist[] for amendment, termination, cancellation, nonrenewal, noncontinuance or causing a resignation.” (Emphasis added.)
Here, the Board found that Latour complied with the notice requirements as set forth in Code § 4.1-407. The Board also found that although the proposed agreement was never implemented, the proposed unilateral amendment to the existing agreement was intended to limit Vintner to its primary area, in violation of Code § 4.1-404. Thus, because the provisions violated the VWFA, Latour necessarily could not prove good cause existed to amend the agreement. Because the Board did not make any other factual findings with respect to its determination of good cause, and because I would hold that the proposed unilateral amendments alone did not violate the VWFA, I would reverse on this issue, and remand to the circuit court with instructions to remand to the Board for a *787 review of the remedy consistent with this holding and the results of any further proceedings before the Board.

. The majority characterizes the hearing panel’s factual finding that Latour did not implement the proposed amendment to the agreement "as to” Vintner as nothing more than a "preliminary finding.” The majority then asserts that the panel's "final conclusion” was that “Latour actually unilaterally implemented the portions of the announcement that it could—on its own—unilaterally implement.” Characterizing an explicit finding of fact as “preliminary,” and then substi *783 tuting its own factual conclusion, is utterly revisionist on the part of the majority. In point of fact, the plain language used by the hearing panel, and later adopted by the Board and the circuit court, was that "Latour’s primary objective, in attempting to force [Vintner’s] signing of the Distribution Agreement and complying with the Requirements. Announcement, was to limit [Vintner] from selling Latour wines outside of what Louis Latour considered [Vintner’s] primary area of responsibility. ... This in the Hearing Panel’s view, constitutes a unilateral change or modification of an agreement without good cause." (Emphasis added.) In other words, and contrary to the characterization of the majority, the hearing panel found that Latour, through the provisions in the announcement, was attempting to limit Vintner to its primary area of responsibility, in direct contravention of the Code. And although the panel acknowledged that Latour had delayed price orders and given the other distributors price incentives, the panel never tied these facts to its finding regarding the unilateral amendment without good cause. And although I agree with the majority that we must “address those actions,” in my view, they are more properly addressed in the context of discrimination and good faith with regard to compliance with the existing agreement. They are not, however, properly addressed when determining whether the requirements announcement, in and of itself, constituted a unilateral amendment to the agreement without good cause.

. Code § 4.1-406 delineates the parameters of "good cause” as follows:
Good cause shall not include the sale or purchase of a winery. Good cause shall include, but is not limited to the following:
1. Revocation of the wholesaler’s license to do business in the Commonwealth;
2. Bankruptcy or receivership of the wholesaler;
3. Assignment for the benefit of creditors or similar disposition of the assets of the wholesaler, other than the creation of a security interest in the assets of a wholesaler for the purpose of securing financing in the ordinary course of business; or
4. Failure by the wholesaler to substantially comply, without reasonable cause or justification, with any reasonable and material requirement imposed upon him in writing by the winery including, but not limited to, a substantial failure by a wine wholesaler to (i) maintain a sales volume or trend of his winery’s brand or brands comparable to that of other distributors of that brand in the Commonwealth similarly situated or (ii) render services comparable in quality, quantity or volume to the services rendered by other wholesalers of the same brand or brands within the Commonwealth simi *786 larly situated. In any determination as to whether a wholesaler has failed to substantially comply, without reasonable excuse or justification, with any reasonable and material requirement imposed upon him by the winery, consideration shall be given to the relative size, population, geographical location, number of retail outlets and demand for the products applicable to the territory of the wholesaler in question and to comparable territories.
Nothing in this section shall be construed to prohibit a winery from proposing or effecting an amendment to a contract with a wine wholesaler in the Commonwealth provided that such amendment is not inconsistent with this chapter.
Good cause shall not be construed to exist without a finding of a material deficiency for which the wholesaler is responsible in any case in which good cause is alleged to exist based on circumstances not specifically set forth in subdivisions 1 through 4 of this section.

. Code § 4.1-407(A) states, in pertinent part, "a winery shall provide a wholesaler at least ninety days' prior written notice of any intention to amend, terminate, cancel or not renew any agreement.”